IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHON D. BEGOUN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | No. 09 C 1555 |
| vs. ) | |
| ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, ) | Magistrate Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant/Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on claimant Ethon Begoun's application for attorney's fees under the Equal Access to Justice Act ("EAJA") pursuant to 28 U.S.C. § 2412. The Social Security Administration ("SSA") denied Begoun's application for disability benefits, which he appealed to this Court. Begoun's appeal was successful. We reversed the decision of the Commissioner of Social Security and remanded the case to the SSA pursuant to 42 U.S.C. § 405(g) for further proceedings. *See* Memorandum Opinion and Order ("Mem.Op.") [Dkt.#34], 2011 WL 307375 (N.D. Ill. January 28, 2011). As the prevailing party, Begoun now seeks payment of his attorney's fees under the EAJA. For the reasons set forth below, Begoun's application for attorney's fees [Dkt.#35] is granted, and he is awarded attorney's fees in the amount of $5911.32.[1]

---

[1] There is a slight variation between the amount of attorney's fees requested by Begoun's attorney and the actual amount awarded as a result of the calculation of the hours worked by his counsel's law clerk at a rate of $100 and not $125 as discussed more fully herein.

## BACKGROUND[2]

Begoun applied for disability insurance benefits on January 23, 1992, alleging he had been disabled since April 28, 1990. He was granted disability insurance benefits beginning in January 1991 and continued to receive disability insurance benefits until August 2002. After reviewing Begoun's work history, the SSA determined in June 2002 that his eligibility for disability insurance benefits had ended on March 31, 1997, three months after he had completed his trial work period, and therefore, the SSA stopped making payments to Begoun.[3] The SSA then sought to recover the overpayment of disability insurance benefits Begoun had received between 1997 and 2002.

Begoun requested a waiver of recovery of the overpayment, asserting that he was without fault in causing the overpayment and that he could not afford to repay to the SSA the overpayment he had received. After reviewing Begoun's request, the SSA concluded that it would not waive recovery of the overpayment. Begoun then requested a hearing before an Administrative Law Judge ("ALJ"). After conducting a hearing, the ALJ concluded that Begoun was not without fault in causing the overpayment of disability insurance benefits and denied his request for waiver of repayment. Ultimately, after exhausting the administrative process within the SSA, Begoun was deemed to be not without fault in causing the overpayment of disability insurance benefits and ordered to repay the overpayment of benefits.

---

[2] The procedural and factual background is discussed more fully in the Court's Memorandum Opinion and Order, which contains references and cites to the administrative record. *See* Mem.Op. [Dkt.#34], at 2-9.

[3] The trial work period is a period during which an individual may test his ability to work and still be considered disabled. 20 C.F.R. § 1592(a).

Begoun then sought judicial review before this Court. In his motion for summary judgement, Begoun argued that (1) the ALJ erred in failing to recognize as reasonable his subjective belief regarding the computation of his trial work period; (2) the ALJ failed to consider the impact of his ongoing medical conditions upon his understanding of his reporting responsibility concerning his trial work period at the time the overpayments occurred; and (3) the ALJ's finding that he was able to repay the overpayment was not supported by substantial evidence.

After careful review, we concluded that: (1) the ALJ did not adequately address or develop fully the record regarding Begoun's subjective beliefs and state of mind concerning his reporting responsibility for his trial work period and the purported profitability of the home repair business Begoun and his wife operated out of their home; (2) the ALJ also did not address all of the relevant evidence in the record, including evidence that did not support his ultimate conclusions and failed to build a logical bridge to his conclusions from the evidence in the record upon which he did rely; and (3) the ALJ's finding that Begoun is able to repay the overpayment was not supported by substantial evidence. As a result of the ALJ's errors, we granted Begoun's motion for summary judgment and remanded the matter to the SSA for further proceedings.

## DISCUSSION

The EAJA allows for recovery of attorney's fees and costs by a party who prevails in a civil action against the United States, "including proceedings for judicial review of agency action." 28 U.S.C. § 2414. A court may award fees under the EAJA when (1) the claimant is a prevailing party; (2) the government's position is not substantially justified; (3) there are no special circumstances that would make an award unjust, and (4) the prevailing party's

3

application for fees is timely filed.  28 U.S.C. § 2412(d)(1)(A); *Comm'r, INS v. Jean*, 496 U.S. 154, 155 (1990); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009).

Here, the Commissioner does not dispute that Begoun is the prevailing party, that his application for fees was timely filed, and that no special circumstances exist that would make an award of fees unjust.  The only element that the parties contest is whether the Commissioner's position was substantially justified.  To defend an EAJA petition, the Commissioner has the burden of proving that, although the matter was remanded to the SSA for further proceedings, his position was nonetheless substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).  Like the parties, the Court will focus solely on whether the Commissioner has met his burden of showing that the positions – both as expressed by the ALJ in the administrative proceeding and by counsel for the Commissioner before this Court – were substantially justified.

**A.  The Commissioner's Position Was Not Substantially Justified**

To demonstrate that his position was substantially justified, the Commissioner must show that his position had each of the following attributes: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded.  *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). To succeed in defeating an application for fees, the Commissioner must show that the position was substantially justified both in the decision reached by the ALJ as well as expressed by counsel during the appeal before this court.  *Golembiewski*, 382 F.3d at 724. The Commissioner's position can be justified even if it was not correct and, therefore, a loss on the

4

merits does not equate to a lack of substantial justification. *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). However, a position at odds with the Commissioner's own rulings is not substantially justified. *Golembiewski*, 382 F.3d at 724.

The Seventh Circuit recently addressed the issue of substantial justification in affirming a denial of EAJA fees. *See Bassett v. Astrue*, -- F.3d --, 2011 WL 2083979 (7th Cir. May 27, 2011). In *Bassett*, the ALJ found the claimant capable of light work prior to his 55th birthday, but failed to explain how she arrived at that precise date. *Id.* at * 1. The district court remanded the case for further explanation of how the ALJ determined the onset date of disability, but found that the ALJ's opinion was otherwise adequate in her discussion of the evidence. *Id.* The claimant then brought a petition for EAJA fees, which the district court denied because the Commissioner's position was deemed substantially justified. *Id.* The Seventh Circuit upheld the denial of EAJA fees because the deficiency in the ALJ's opinion amounted only to an articulation error. *Id.* The Seventh Circuit found that "it typically takes something more egregious than just a run-of-the-mill error in articulation to make the Commissioner's position unjustified ...." *Id.* at *2. That shortcoming alone usually is not enough to make the ALJ's opinion or the Commissioner's defense of it unjustified. *Id.* Rather, it typically takes something like an ALJ "ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis" to render the Commissioner's position unjustified. *Id.*

In determining whether the Commissioner has met his burden of proving that his position was substantially justified, the court must treat the case as "an inclusive whole rather than as atomized line items." *Hudson v. Astrue*, 2010 WL 335318, at *1 (N.D. Ill. Jan. 29, 2010) . As

such, the court must make a "global assessment of the Commissioner's conduct rather then engage in 'argument counting.'" *Id.* (quoting *Stewart*, 561 F.3d at 683). However, a court must award fees under the EAJA if either the Commissioner's position or pre-litigation conduct is not substantially justified. *Stewart*, 561 F.3d at 683. And, the Commissioner's pre-litigation conduct includes the ALJ's decision. *Id.*

The Commissioner argues that although the Court remanded the case to the SSA for further proceedings, Begoun's application for attorneys fees under the EAJA should be denied because the ALJ and the Commissioner had a reasonable basis in law and in fact for their position that Begoun was not without fault in obtaining social security disability benefits to which he was not legally entitled. *See generally* Def's Answer to Pl's Application for Fees [Dkt.#38], at 4-7. We disagree. In remanding this case to the SSA, we found that the ALJ had failed to properly develop the record, failed to address all the relevant evidence in the record and misconstrued some of the record evidence the ALJ did address, and failed to make proper credibility findings. We will address each point in turn. Thus, the Commissioner's position was not substantially justified, and an award of fees under the EAJA is proper.

**1.    The ALJ's Failure to Properly Develop the Record Is Not Substantially Justified**

The August 23, 1996 notice letter which explains how a trial work period is calculated is the sole evidence the ALJ cites for his conclusion that Begoun was aware of his reporting obligation. The ALJ, however, did not question Begoun about whether he received that letter, and there was no evidence in the record Begoun actually received it. Although the ALJ noted that Begoun testified that he read everything he received from the SSA, the significance of that admission again depends on some evidence that Begoun received the August 23, 1996 letter.

There also was no evidence in the record that the letter was sent to Begoun at his then-current address in August 1996. That omission is potentially significant given other evidence in the record indicating that Begoun may have changed his address during the time period in question.

The Commissioner argues that it was reasonable for the ALJ to rely on the August 1996 letter given that the SSA sends numerous letters and notifications to a very large number of claimants, and there is no practical way to actually verify receipt of each piece of correspondence the SSA sends to recipients of disability benefits. Def's Answer to Pl's Application [Dkt.#38], at 5. It may be true that in some, and even many, cases it is difficult to verify receipt of a letter. Here, however, there was an easy and practical way of at least trying to verify Begoun's receipt of the letter – the ALJ could have, and should have, asked Begoun if he received the August 23, 1996 letter at the hearing convened to determine whether he was without fault in receiving an overpayment of benefits. At a minimum, the ALJ could have attempted to verify Begoun lived at the address to which the letter purportedly was sent in August 1996. Given the singular importance the ALJ attached to the August 1996 letter in putting Begoun on notice of his trial work period reporting obligations, the failure to do more to develop the record so as to even circumstantially establish that Begoun received that letter is not substantially justified.

The Commissioner also tried to bolster the ALJ's decision by pointing to evidence in the record, not cited by the ALJ in his decision, to support the ALJ's conclusion that Begoun knew or should have known that he was required to furnish the SSA with information concerning his work activity, including his self-employment. Mem.Op. at 18-19. However, it is not substantially justified for the Commissioner to try to bolster the ALJ's decision by pointing to

7

evidence in the record that the ALJ did not mention in his decision. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Stewart*, 561 F.3d at 684. It is impossible to evaluate what weight, if any, the ALJ would have ascribed to such evidence had he considered it in reaching his conclusion. Nor do we know what Begoun would have said if he were confronted with that evidence.

In addition, we concluded that the ALJ erred because he did not fully develop the record regarding Begoun's allegations of pain and his contention that his faculties may have been impaired, as Begoun testified, by the narcotic pain medication that he was taking. Mem.Op. at 24. Commissioner argued that Begoun and his wife had the cognitive, intellectual and reasoning abilities to operate a home repair business and therefore it was reasonable to conclude that Begoun could understand the August 1996 letter explaining the trial work period. Again, however, this begs the question of whether Begoun ever received the August 1996 letter. Accordingly, for all of these reasons, the Commissioner's conduct, when viewed in its entirety, was not substantially justified because the ALJ's errors went beyond "a run-of-the-mill" error in articulation. *Bassett*, 2011 WL 2083979, at *2.

## 2. The ALJ's Failure to Make a Proper Credibility Finding Is Not Substantially Justified

In our decision remanding the case to the SSA, we also found that the ALJ did not make any specific credibility determination yet he implicitly found that Begoun was not credible. Mem.Op. at 23. Begoun argued to the ALJ that he was not at fault for his failure to report his self-employment work activities because, among other things, he did not believe that the business he operated with his wife out of his home was profitable. The ALJ rejected Begoun's testimony based solely on his review of Begoun's tax returns for years 1997, 1998, and 1999.

Those tax returns, according to the ALJ, showed that Begoun's business made a profit. Further, according to the ALJ, because Begoun signed his returns, he should have know that his business was profitable.

The reasons given by the ALJ for his finding that Begoun should have known his business was profitable were flawed. A closer look at Begoun's tax returns reveals that, in two of the three years referenced by the ALJ in his decision, Begoun had no taxable income. Mem. Op. at 21. The ALJ also did not follow the SSA's own regulation which states that in determining "countable net income" from self-employment, the SSA will "deduct the reasonable value of any significant amount of unpaid help furnished by your spouse, children or others" and will "deduct unincurred business expenses paid for by another individual." 20 C.F.R. § 404.1575(c)(1). The ALJ performed no such analysis to support his conclusion that Begoun's business was profitable. The ALJ, therefore, was not substantially justified in relying on Begoun's tax returns to discredit Begoun's testimony that he did not think his home repair business was profitable when the SSA's own regulations clearly instruct that the net income reported on a taxpayer's tax return alone does not determine whether a business is profitable. *See also* 20 C.F.R. § 404.1575(a)(2). Because the ALJ also made no attempt to engage in the analysis required by SSA regulations regarding the calculation of Begoun's self-employment income during the years in question, the ALJ's determination thus is at odd's with the Commissioner's own regulations and is not substantially justified. *Golembiewski*, 382 F.3d at 724.

Moreover, in mischaracterizing the import of Begoun's tax returns, the ALJ rejected Begoun's testimony that, among other things, he relied on his accountant's statement that his

9

business was not making any money, without going through the credibility analysis required by SSR 96-7p. An ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Because the ALJ failed to comply with the requirements of SSR 96-7p and judicial precedent for evaluating Begoun's credibility, and because the reasons the ALJ gave for discrediting Begoun's testimony were flawed, there was no reasonable legal or factual basis for the ALJ's credibility finding.

The ALJ also failed to inquire about or develop Begoun's testimony that his faculties were impaired by the narcotic pain medication he was taking during the time he was charged with responsibility for reporting his self-employment. This is contrary to the statutory requirement that the ALJ specifically take into account any physical or mental limitation an individual may have in determining whether he is without fault in causing an overpayment of benefits. 42 U.S.C. § 404(b); 20 C.F.R. § 404.507; *Wilkening v. Barnhart*, 2004 WL 1005718 at *8 (N.D. Ill. 20040), *affirmed*, 139 Fed. Appx. 715, 2005 WL 1317327 (7th Cir. 2005). When an ALJ "contravene[s] longstanding agency regulations, as well as judicial precedent," his position does not have a reasonable basis in law and fact and cannot be called substantially justified. *Stewart*, 561 F.3d at 684; *Golembiewski*, 382 F.3d at 724.

Accordingly, for all of these reasons, the ALJ's credibility findings and the Commissioner's litigation position defending the ALJ's findings are not substantially justified.

### 3. The ALJ's Finding that Begoun Is Able to Repay the Overpayment Is Not Substantially Justified

In remanding this case to the SSA, we also concluded that the ALJ erred because his finding that Begoun was able to repay the overpayment was not supported by substantial evidence. Mem.Op. at 24. The ALJ concluded that even if Begoun were without fault in accepting the overpayment, he would not have been entitled to a waiver of recovery of the overpayment because it would have been against equity and good conscience. Without any explanation or support in the record, the ALJ rejected Begoun's calculation of his monthly grocery expense of $1300 and reduced it to $800 per month, asserting that the average cost of food for one individual is $200 per month. As a result, the ALJ recalculated Begoun's monthly expenses and determined that with the reallocation of the extra $500 that Begoun had allocated to food, Begoun's monthly income now exceeded his expenses by $300. Therefore, repayment would not deprive his family of income required for ordinary and necessary living expenses. Mem.Op. at 10.

The Commissioner now argues that the ALJ's decision was substantially justified because Begoun failed to offer any supporting documentation for the monthly expenses he reported to the SSA. Def's Answer to Pl's Application [Dkt.#38], at 6. Begoun's failure to submit documentation to the SSA for his monthly expenses, however, does not excuse or justify the ALJ's decision to reject that calculation without any support or explanation for his conclusion that $800 is a more appropriate amount for a family of four's monthly grocery expense. The ALJ's assertion that the average cost of food for an individual is $200 per month was pure speculation and not supported by any evidence in the record. Therefore, the ALJ's finding and the Commissioner's litigation position defending the ALJ are not substantially justified.

11

**B. The Attorney's Fees Begoun Seeks Are Reasonable**

Begoun seeks fees for work performed by his attorney in the summary judgment proceeding and in preparing the present fee petition. Although the Commissioner has not disputed the amount requested, Begoun still bears the burden of demonstrating his fee request is reasonable. *See* 28 U.S.C. § 2412(d)(2)(A); *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997); *Harris v. Astrue*, 2009 WL 1684576, at *3 (N.D. Ill. June 15, 2009).

Courts have recognized that a claimant is entitled to fees incurred in the underlying action as well as time spent preparing an EAJA petition. *See Commissioner, INS v. Jean*, 496 U.S. 154, 161-162 (1990). Begoun provides a detailed itemization of the worked performed by attorney Marcie E. Goldbloom and law clerk Suzanne Blaz. In total, Begoun is seeking an award of fees in the amount of $6043.32, calculated as follows: .85 hours of attorney time billed in 2009 at an hourly rate of $172.50 and 30.55 hours of attorney time in billed in 2010 and 2011 at an hourly rate of $171.25 and 5.32 hours of law clerk time billed at an hourly rate of $100.[4]

Begoun seeks an hourly rate of $171.25 (and a hourly rate of $172.20 for .85 hours in 2009) for his attorney and $100 for the worked performed by the law clerk. While the EAJA provides a statutory cap of $125 per hour on attorneys' fees, a court may increase that amount if justified by an increase in the cost of living or special factors. 28 U.S.C. § 2412(d)(2)(A). The

---

[4] The Court notes that Begoun's counsel requested an hourly rate of $100 for the worked performed by Ms. Blaz, the law clerk. Pl's Application for Fees [Dkt.#35], at 5. Yet, when calculating the total amount due for the hours worked by Ms. Blaz, it appears that counsel used an hourly rate of $125. Pl's Application for Fees [Dkt.#35], at 7. While courts may have approved awards of fees for work performed by a law clerk at both the $100 and $125 hourly rate, since counsel requested a rate of $100 that is the hourly rate the Court will utilize.

Seventh Circuit has acknowledged that, "given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted" for the time in which the fees were incurred. *Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008). Begoun argues that his requested hourly rate is supported by the cost of living calculations in the Consumer Price Index, a printout of which is attached to his motion. (Pl's Application, Exs. A and B). Courts in this district have allowed plaintiffs in EAJA cases to use the Consumer Price Index to adjust hourly attorney rates to account for cost of living increases. *See, e.g., Warren v. Astrue*, 2010 WL 5110217, at *5 (N.D. Ill. Dec. 8, 2010).

As mentioned above, the Commissioner does not challenge the number of hours expended nor the rates charged by the attorney and law clerk in this case. Upon review, the Court likewise finds no flaw in the methodology used by counsel, and we find that the time expended and the rates charged are reasonable.[5] Courts have approved comparable rates for work in Social Security cases performed in late 2009 and 2010. *See, e.g., Richards v. Astrue*, 2011 WL 686297 (N.D. Ill. Feb. 16, 2011) (awarding $172.50); *Warren*, 2010 WL 5110217, at *5 (awarding $173.75 hourly rate); *Hamrick v. Astrue*, 2010 WL 3862464, at *4 (N.D. Ind. Sept. 27, 2010) (awarding $173 hourly rate). See also *Mathews-Sheets v. Astrue*, No. 10 3746 (7th Cir. Aug. 5, 2011) (implicitly authorizing $170 per hour if supported by the record). Moreover, courts have awarded $100 an hour for a law clerk. *See* Pl's Application for Fees [Dkt.#35], at 5 (citing cases) and Ex. G (attaching cases); *see e.g., Dillon v. Astrue*, No. 07 C 3652 (N.D. Ill.

---

[5] Courts have noted that, generally speaking, up to 60 hours is a reasonable amount of time billed for a straightforward Social Security disability case. *See Schulten v. Astrue*, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (collecting cases).

October 24, 2008) (awarding Ms. Blaz $125 per hour); *Whisenant v. Astrue*, No. 06 C 5322 (N.D. Ill. Oct. 14, 2008) (awarding Ms. Blaz $142 per hour)).

Therefore, we grant Begoun's request for fees, and he is awarded $171.25 per hour for attorney time (with the $172.50 for the .85 hours in 2009) and $100 an hour for law clerk time. As such, the Court awards $5378.32 for attorney hours and $533 for law clerk hours for a total of $5911.32.

C. **The Award Of Fees Should Be Made Payable To Begoun's Attorney Pursuant To The EAJA Assignment, Provided Begoun Is Not In Debt To The Government**

Begoun argues that the award of fees should be paid to his attorney pursuant to the EAJA Assignment. Pl's Application [Dkt.#35], at 7. Relying on *Astrue v. Ratliff*, 560 U.S. __, 130 S.Ct. 2521 (2010), the Commissioner, however, argues that the award of fees should be paid directly to Begoun and not his counsel. Def's Answer to Pl's Application [Dkt.#38], at 7.

The Commissioner's position is an oversimplification of the holding in *Ratliff*. The Supreme Court held in that case that the United States was entitled to offset any obligation owed by the claimant to the government against an otherwise payable EAJA award. *Holofchak v. Astrue*, 2011 WL 662735, at *1 (N.D. Ill. Feb.14, 2011). The holding in *Ratliff* is limited to cases when a claimant is in debt to the government. 130 S. Ct. at 2529; *Hall v. Astrue*, 2010 WL 5341879, at *4 (S.D. Ind. Dec. 20, 2010). *See also Mathew-Sheets v. Astrue*, -- F.3d -- 2011 WL 3437029 (7th Cir. May 5, 2011) (distinguishing *Ratliff* from a case in which the claimant had assigned to his lawyer his right to EAJA fees).

Begoun argues, and the Court agrees, that the award of fees may be made payable to Begoun's counsel pursuant to his assignment of his EAJA award, assuming he can establish that he owes no debt to the United States Treasury. Although Begoun's counsel references some sort

14

of a release relating to the United States Treasury in her reply brief( [Dkt. #45], at 3), nothing is attached to evidence that statement as a factual matter.

## CONCLUSION

For all of the reasons set forth in the Court's Memorandum Opinion and Order, Begoun's application for attorney's fees [Dkt. #35] is granted. Begoun is awarded attorney's fees in the amount of $5911.32. This matter is set for hearing on August 30, 2011, at 9:45 a.m., for the purpose of determining whether the attorney's fees payment should be made to Begoun's attorney pursuant to his EAJA assignment and because he owes no debt to the government. Alternatively, if the parties are able to work this out themselves and wish to forego a hearing, the Court will enter an agreed order that the fees be paid to Begoun, or to his attorney, and the hearing date will be stricken.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 17, 2011